IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SCHWARTZ AND HAYS, a New Mexico General
Partnership,

        Plaintiff,

  -vs-                                                                 No. CV 01-0420 LH/KBM-ACE

KAY HAFEN, IRENE HAFEN, and NORTHRISE
ASSOCIATES, a New Mexico General Partnership,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

       **THIS MATTER** comes before the Court on Defendants' Motion for Award of Taxable Costs (Docket No. 80) and Defendants'/Counterclaimants' Motion for Award of Attorneys' Fees and Costs Pursuant to Contract (Docket No. 81), both filed March 11, 2003. The Court, having considered the Motions, the memoranda of the parties, and the applicable law, and otherwise being fully advised, finds that the Motions are well taken and will be **granted**.

**Background**

       The parties' tumultuous and litigious relationship began on January 3, 1994, when Schwartz and Hays ("S&H") entered into a Preferential Right to Purchase agreement ("1994 Agreement") with the Defendants/Counterclaimants (collectively, the "Hafens") regarding the Northrise Business Park in Las Cruces, which Kay and Irene Hafen had begun developing in 1985. Under the 1994 Agreement the Hafens granted S&H a ten-year exclusive option to buy, with S&H agreeing to

develop parcels in accordance with the Hafens' Development Plan and covenants, to not seek rezoning, and to refer to Northrise Associates any potential purchasers intending unzoned use. Multiple disputes ensued, with the Hafens subsequently amending the covenants in an attempt to keep S&H from marketing the parcels for development of a hospital, which was not a permitted use.

In 1998, S&H sued the Hafens in state court, seeking an injunction to prevent them from enforcing the Amended Covenants and a declaration that the Amended Covenants were unenforceable. Later that year, the state court granted summary judgment to the Hafens on both of S&H's claims, rejecting the argument that permitted use meant any use, including special uses or hospitals, and finding that Amended Covenants were appropriately adopted. The court denied summary judgment on the Hafens counterclaim, however.

The parties subsequently mediated and settled the state court litigation on October 26, 1999. Under their agreement, S&H was to refrain from marketing for uses not permitted by right, e.g. hospitals; S&H acknowledged the validity and legality of Amended Covenants; and a memorandum of terms was executed by all parties, with a formal settlement agreement to follow. The resulting settlement agreement (1999 Settlement Agreement) was executed on December 23, 1999, and included the following provisions:

> 5. Subject to the terms and conditions hereinafter set forth in paragraph(s) 6, 7 and 8, below, and to the terms of 1994 Agreement, S&H shall have and retain the right to market the parcels remaining subject to the Agreement for Preferential Purchase of Real Estate, dated January 3, 1994 (Parcels 11, 14, and part of 13) until May 1, 2002. Any and all marketing and/or utilization of said parcels by S&H, shall identify the parcels as being subject to the amended covenants and restrictions referred to in Paragraph 4, above, and shall indicate the parcels may be used or developed only for R-4 permitted uses, (that is, uses permitted by right) as defined by the City of Las Cruces Zoning Code. Should the zoning code applicable to these parcels be amended in the future, such amendments shall be effective to change the zoning of these parcels. S&H and its successors in interest to these parcels will never

seek to change the uses or zoning of the subject parcels. S&H shall not, directly or indirectly, initiate, urge, encourage, participate in or support any effort to change the uses or zoning of the parcels subject to the agreements of these parties or to change or expand the R-4 permitted uses, (that is, uses permitted by right). S&H shall not be subject to any liability should an unrelated successor in interest violate this provision without S&H's involvement. S&H shall provide any subsequent purchaser of land from S&H with written notice of this provision as part of the negotiations of S&H for its sale of said land.

. . . .

11. In the event of any future dispute between the parties hereto relating to the performance of the Agreement or the 1994 Agreement, the prevailing party to such dispute shall be entitled to an award of his, her or its reasonable costs and reasonable attorney fees in addition to any other relief awarded.

Meanwhile, in early December of 1999, S&H notified the Hafens that it wished to close on the property before the end of the year. S&H had begun marketing parcels to Heritage Ventures ("Heritage"), and entered into Exchange Agreements with Heritage on December 22, 1999. Double closings, the Hafens to S&H and S&H to Heritage, were scheduled for December 29th. Heritage decided not to proceed at the closing, however, in part because of the Hafens' initial insistence that Heritage sign a Re-Zoning Prohibition, which it subsequently withdrew, and also because of the Hafens' threats to take legal action, if necessary, to enforce the zoning restrictions. During March and April 2000, S&H marketed and sold parcels to Triad Hospitals ("Triad"), without indicating or communicating that the land could be used or developed only for R-4 permitted uses and without providing Triad a copy of paragraph 5 of Settlement Agreement or referring Triad to the Hafens.

S&H filed this action in state court against Heritage and the Hafens on December 28, 2000. It dismissed its claims against Heritage on February 15, 2001, and on March 13, 2001, filed the First Amended Complaint for Interference with Contractual Relations and Breach of Contract, naming only the Hafens as defendants. S&H's first claim against the Hafens was for wrongfully interfering with the contractual relations between S&H and Heritage. In its second claim for relief S&H asserted

3

a claim for breach of the covenant of good faith and fair dealing implied in the contractual relationship between the parties.

The Hafens removed the case to federal court on April 16, 2001, and asserted in their Counterclaim that in its dealings with both Heritage and Triad, Plaintiff breached the 1994 Agreement by not referring the buyer to the Hafens as prospective purchasers who sought to acquire and/or use the parcels for purposes for which it was not zoned and breached the Settlement Agreement by not identifying the parcels as subject to the covenants and restrictions enumerated in paragraph 4, by not providing written notice of paragraph 5 and by supporting efforts to change the zoning, in violation of paragraph 5.

On November 15, 2002, following oral argument by the parties, the Court granted the Hafens summary judgment on Plaintiff's First Amended Complaint, granted the Hafens summary judgment as to liability on their counterclaim that S&H breached both the Settlement Agreement and the 1994 Agreement in the Triad transaction, and denied the Hafens summary judgment on liability as to the Heritage transaction. The parties subsequently filed their Joint Motion for Entry of Final Judgment, Pursuant to Rule 54(b), Vacation of Trial Setting, and Stay of Further Proceedings on Counterclaim on February 6, 2003, which the Court granted, entering Final Judgment on February 10, 2003.

This case is currently on appeal to the Tenth Circuit Court of Appeals. While filing of a notice of appeal generally divests a district court of jurisdiction over the issues on appeal, the Court retains jurisdiction over collateral matters not involved in the appeal, such as the Motions addressed herein. *See, e.g., Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998).

**Motion for Award of Taxable Costs**

Plaintiff not having responded to Defendants' Motion for Award of Taxable Costs, which pursuant to the Local Civil Rules constitutes consent to grant the Motion, *see* D.N.M.LR-Civ 7.1(b), the Clerk entered the Order Settling Costs in favor of Defendants in the amount of $4,508.03 on April 3, 2003. Plaintiff, however, previous to entry of the Clerk's Order, had secured Defendants' approval for an extension of time in which to respond. Therefore, on April 10, 2003, the Court entered its Order granting the parties' Stipulated Motion to Vacate Clerk's Order Setting Costs.

Plaintiff subsequently filed its Response to Motion for Award of Taxable Costs. In its Response, Plaintiff admits that Defendants are the prevailing party in this case and makes a single argument regarding taxable costs:

> If the Court reviewed the deposition testimony attached to the Summary Judgment briefs, then Plaintiff admits that the costs of those depositions, as set forth in the schedule incorporated into Defendants' Motion, is taxable, as are the witness fees, mileage and subsistence for those witnesses.

The Court reviewed all exhibits attached to the summary judgment briefs in preparing for the motions hearing on November 14, 2002. Thus, finding Defendants' Motion for Award of Taxable Costs otherwise well taken, the Motion will be granted.

**Motion for Award of Attorneys' Fees and Costs Pursuant to Contract**

New Mexico follows the "American rule that, absent statutory or other authority, litigants are responsible for their own attorney's fees." *Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 129 (1990). Agreement of the parties to a contract constitutes such "other authority," and the scope of that authority is "defined by the parties in the contract," with the determination of what fees are authorized being a mater of contract interpretation. *Id.* Thus, pursuant to paragraph 11 of the Settlement Agreement, the Hafens are entitled to an award of attorney fees and related costs if 1) this

dispute relates to the performance of the Settlement Agreement or the 1994 Agreement, 2) they are the prevailing party in this dispute, and 3) the costs and fees are reasonable. Given Plaintiff's acknowledgment that the Hafens are the prevailing parties, two issues remain: whether this action and the parties' underlying dispute are related to the 1994 Agreement and/or the Settlement Agreement and whether the attorneys' fees and costs Defendants seek are reasonable and necessary.

Plaintiff argues that its tort claim against the Hafens for intentional interference with the contractual relations between S&H and Heritage is not related to the performance of the Settlement Agreement or the 1994 Agreement and that the Court, at a minimum, should segregate fees between its contract claim for breach of the implied covenant of good faith and fair dealing and its tort claim, with the bulk of Defendants' efforts, at least ninety percent, allocable to the tort claim. The Court disagrees.

In its oral ruling granting the Hafens' Motion for Summary Judgment on Plaintiff's Complaint, the Court found that while the Hafens intentionally interfered with the closing between S&H and Heritage, they did not act with improper motive: "The motive was clear; they wanted to protect their zoning, the zoning that they had acquired after a great deal of litigation and negotiation." (Part. Tr. Vol. I at 44.) The Court additionally held that the Hafens' threat to sue Heritage if it subsequently attempted to change the zoning was not predatory or an improper means of interference, as it was "clear that the Hafens justifiably believed in the merit of their threatened litigation." (*Id.* at 44-45.) In fact, the Court concluded that the Hafens' actions were privileged, in that the Hafens were asserting bona fide claims, pursuant to the RESTATEMENT (SECOND) OF TORTS § 773 cmt. a, illus. 1 (1992), by threatening litigation to protect their legally protected interests. (Part. Tr. Vol. I at 45.)

6

The Hafens' legally protected interests, of course, and the justification for their actions are found in the parties' contractual obligations, as set forth in the 1994 Agreement and the Settlement Agreement. S&H, itself, alleges as much by asserting in its First Amended Complaint that the Hafens breached "their contractual obligation" to Plaintiff by demanding that Heritage execute a Re-Zoning Prohibition as part of its closing transaction. (*See* First Am. Compl. ¶ 11.) The Court therefore finds that S&H's claim for tortious interference with contractual relations, as well as its claim of breach of contract, are directly related to the performance of the 1994 Agreement and the Settlement Agreement, thereby bringing this dispute within the purview of paragraph 11 of the Settlement Agreement and entitling the Hafens to reasonable costs and attorneys' fees. *See Montoya*, 110 N.M. at 129-30.

The fee applicant bears the burden of establishing not only entitlement to an award, but also of documenting the appropriate hours expended and hourly rates. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998)(quoting *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1201 (10th Cir.1986)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))). "Those opposing fee applications have obligations, too[;] objections and proof from fee opponents . . . must be specific and reasonably precise." *Am. Civ. Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999)(quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988))(internal quotations omitted).

S&H argues that the Hafens' claimed attorneys' fees and costs are not reasonable in that they charge for duplicative efforts. In support of this position, Plaintiff relies solely on the following declarations:

> The fees themselves are unreasonably high . . . fees in one-half the amount claimed would be reasonable amount . . . .
>
> The statements also appear to reflect that multiple timekeepers worked on identical or very similar tasks at various times, resulting in an apparent duplication of effort. . . .Without performing extensive calculations, I cannot provide exact figures as to the amount of the duplication, but it appears to have added substantially to the amounts . . . .
>
> [T] statements also reflect substantial charges for intra-office conferences among multiple timekeepers . . . .Without performing extensive and detailed calculations, I cannot provide exact figures as to the amounts billed for these intra-office conferences, but they appear to be substantial.

(Pl.'s Mem. Opp'n, Aff. Rod. M. Schumacher at ¶ 5b - d.)

The Court finds the Hafens' fee application sufficiently specific and detailed. S&H's objections, on the other hand, clearly are not. As the Eleventh Circuit has noted, "[g]eneralized statements that the time spent was reasonable or unreasonable . . . are not particularly helpful and not entitled to much weight." *Norman*, 836 F.2d at 1301. Additionally, "a fee opponent's failure to explain exactly which hours [are] viewed as unnecessary or duplicative is generally viewed as fatal." *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinella County*, 278 F.2d 1301, 1315 (M.D. Fla. 2003)(citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)). Thus, the Court finds the Hafens have met their burden, S&H has not, and the Motion for Award of Attorney's Fees and Costs Pursuant to Contract will be granted.

**IT IS HEREBY ORDERED** that Defendants' Motion for Award of Taxable Costs (Docket No. 80), filed March 11, 2003, is **GRANTED**, and **costs are taxed against the Plaintiff and in favor of the Defendants in the amount of $4,508.03**.

**IT IS FURTHER ORDERED** that Defendants'/Counterclaimants' Motion for Award of Attorneys' Fees and Costs Pursuant to Contract (Docket No. 81), filed March 11, 2003, is **GRANTED**, and **Plaintiff shall pay Defendants/Counterclaimants attorneys' fees and costs in the amount of $181,189.35**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**